1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STUDENT DOE,

                    Plaintiff,

        v.

MERCER ISLAND SCHOOL DISTRICT
NO. 400, et al.,

                    Defendants.

CASE NO. C06-395JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross motions for summary judgment (Dkt. ## 17, 51).  The court has considered the papers filed in connection with the motions and has heard oral argument.  For the reasons stated below, the court GRANTS Defendants' motion and DENIES Plaintiff Student Doe's motion.

## II.  BACKGROUND

The facts in this case are not in dispute.  On Tuesday, February 21, 2006, while home on midwinter break from school, Doe argued with his two older sisters about use of

ORDER – 1

the family's home computer.  The dispute escalated, and Doe, a thirteen year-old boy, became violent.  He threatened his sisters with scissors and a ten-inch butcher knife, and upset them by shaking the cage of the family's pet rabbit.  At one point, Doe hurled the scissors at one of his sisters.  The girls barricaded themselves behind a bedroom door and called their father, who was not at home.  Upon receiving the call on his cell-phone, Doe's father dialed 911.  Doe's father told the 911 operator that his son was "out of control."  Blakney Decl., Redacted Ex. A at 4-5 (Dkt. # 19).  Shortly thereafter, two Mercer Island Police officers arrived at the family residence, arrested Doe for assault, and transported him to the juvenile detention facility.  Doe confessed to the assault and the police department released him from custody the following morning.  Fortunately, neither sister suffered an injury as a result of Doe's conduct.

Doe returned to Islander Middle School ("IMS") on Monday, February 27, 2006.  That afternoon, Mercer Island Police Officer Art Munoz relayed information regarding Doe's assault to IMS administrators as well as Defendant Dr. Cynthia Simms, the Superintendent of Defendant Mercer Island School District No. 400 ("the District").  Officer Munoz contacted Dr. Simms in his capacity as the liaison between Mercer Island's police department and the District.  Officer Munoz heard of Doe's assault over his police radio immediately after it occurred.  He also interviewed Doe at the police station and reviewed the responding officers' police report.

On the morning of February 28, 2006, Principal Sharon Gillaspie called Doe's parents to schedule an appointment to discuss a "situation" involving their son.  Compl. ¶ 39.  Doe's mother had already planned on driving Doe to school that morning because he had an appointment with his psychotherapist that would make him late for class.  She agreed to stop by the administration office.  Upon arrival, Principal Gillaspie informed Doe's mother that Doe could not remain at school that day.  She expressed the school

ORDER – 2

administration's concern over Doe's presence at IMS given his prior assault, and explained to Doe's mother the school's student-at-risk-of-violence ("SAV") policy.[1] Principal Gillaspie gave Doe's mother a copy of the policy. According to Principal Gillaspie, she offered to give Doe some homework to do during the expulsion period but Doe's mother declined because the family was going on a vacation. Blakney Supp. Decl., Ex. B. (Gillaspie Dep. at 98).

Doe and his parents returned to school that evening to meet with Superintendent Dr. Simms. Dr. Simms invited Doe to explain what had happened in the family home prior to the arrest, but Doe's parents told Dr. Simms that his public defender for the criminal matter advised Doe not to discuss the incident. In any event, Dr. Simms told Doe and his parents that she was familiar with what happened based on her conversation with Officer Munoz. She stated she was expelling Doe on an emergency basis and that as a condition for reentry, he would need to see a District-approved mental health professional for a "violence risk assessment." Based on the evaluator's report as to whether Doe posed a danger to himself or other students, Dr. Simms would make a decision regarding his return to school.

The meeting lasted for over an hour, the bulk of which Dr. Simms and Doe's parents occupied expressing their disagreement about the qualifications for performing violence risk assessments. In addition, Doe's parents – both employed in the mental health profession – protested the idea of having a District evaluator see their son, in part out of concern over the confidential nature of the patient-psychotherapist relationship. John Doe Decl. ¶ 13; Jane Doe Decl. ¶ 17. They urged Dr. Simms to allow Dr. Justin

---

[1]The SAV policy includes, among other things, a directive that students "shall" receive a "violence risk assessment" if they exhibit "violent behavior on or off school grounds," and the steps school administrators and staff must follow for reporting a student's threatening conduct. Lobsenz Decl., Ex. A (Simms Dep. Ex. 6.).

ORDER – 3

Mohatt, Doe's regular therapist, to perform the evaluation. Dr. Simms, however, did not believe that Dr. Mohatt had the proper forensic training.

Before the meeting ended, Dr. Simms gave the Does copies of the District's policies on expulsion and due process procedures. Specifically, Dr. Simms testifies (and Doe does not directly contest) that she gave the Does a copy of District Board Policy 5114, District Regulations 5114.1-.5, and the SAV policy. See Blakney Supp. Decl., Ex. B. (Simms Dep. at 204-205). District Regulation 5114.4 directs the District to send written confirmation of an emergency expulsion within 24 hours of the decision and provides that an expelled student has 10 days within which to request a hearing. Simms Dep. Ex. 6. Other than give the Does a copy of the policy, Defendants admit that they did not send separate written confirmation of the expulsion decision within 24 hours. Dr. Simms did compose a letter memorializing the February 28, 2006 meeting, but the Does did not receive it until March 7, 2006. Jane Doe Decl., Ex. A.

The Does called Dr. Mohatt after the meeting and asked him to telephone Dr. Simms to explain his qualifications for performing a violence risk assessment. Apparently, Dr. Simms reiterated her position to Dr. Mohatt that the Does must hire one of the District-approved evaluators. According to Doe's mother, she attempted to contact some of District-approved therapists that she and her husband believed had the necessary qualifications to perform the assessment. She attests that many were unavailable, some were geographically distant, and others did not return her phone calls. Believing that their son posed no danger to anyone in the first place, Doe's parents grew frustrated with the process. John Doe Decl. ¶ 22; Jane Doe Decl. ¶ 27.

Sometime on or about March 7, 2006, the Does hired an attorney. Shortly thereafter, the District acquiesced to having Dr. Mohatt perform the violence risk assessment. Dr. Mohatt evaluated Doe and submitted his report to the District. On March 13, 2006, Doe's parents, their attorney, and Dr. Simms met to discuss Dr.

ORDER – 4

Mohatt's report in which he concluded that Doe was not a danger to himself or others. Dr. Simms agreed that Doe could return to school the next day.  In total, Doe missed 10 days of school.

A month after his expulsion, Doe, through his parents, filed suit against the District and Dr. Simms.  In his complaint he alleges that Defendants violated his procedural and substantive due process rights pursuant to 42 U.S.C. § 1983.  Doe also alleges that Defendants denied him his right to a public education under state law.  Doe originally requested monetary, injunctive, and declaratory relief.  He has since voluntarily dismissed his "damages claims," such as "pain, mental anguish and emotional distress" (Dkt. # 62).  Counsel insisted at oral argument that Doe did not intend to drop all requests for monetary relief and that he was still praying for damages, if any, arising from the fact that he missed ten days of school.  Doe also asks this court to enjoin Defendants from maintaining information regarding the expulsion in his school record.

Defendants move for summary judgment on all claims.  Doe cross-moves for summary judgment on his procedural due process claim.

## III.  DISCUSSION

In resolving a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  Intel Corp. v.

ORDER – 5

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

**A.    Procedural Due Process**

Doe alleges a violation of his procedural due process rights under the Fourteenth Amendment based largely on Defendants' failure to follow the expulsion procedures outlined in the Washington Administrative Code ("WAC"), as well as the District's own policies.  Specifically, Doe attacks Defendants' failure to provide written notice within 24 hours of the expulsion in contravention of WAC 392-400-300.  Defendants concede that they failed to provide written notice, but argue that providing oral notice to Doe satisfied the constitutional minimum.

In his cross-motion, Doe also contends that Defendants lacked sufficient reason to expel him.  Cross Mot. at 14.  The propriety of Defendants' decision is a separate question from whether Defendants afforded Doe adequate process in rendering that decision.  Doe's challenge to the decision itself more closely resembles a substantive due process claim, which the court addresses in Part III.B., *infra.*

To come within the protections of the Due Process Clause of the Fourteenth Amendment, Doe must demonstrate that, (1) his exclusion from IMS deprived him of a liberty or property interest, and (2) Defendants failed to provide sufficient due process with respect to that deprivation.  See Bd. of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 83-85 (1978).  As to the first element, the court concludes that Doe has a state-created property interest in attending public school, a point which Defendants do not contest.  That is, although the Washington State Supreme Court has not directly addressed the question, Washington courts have implicitly recognized that state law vests students with a property interest in public education.  See Seattle Sch. Dist. v. State, 585 P.2d 71, 91-93 (Wash. 1978) (construing WASH. CONST. art. 9, § 1 as imposing a duty on the State to provide and finance public education and a corollary "right" of students to

ORDER – 6

such schooling); <u>cf. Nieshe v. Concrete Sch. Dist.</u>, 127 P.3d 713, 719-721 (Wash. Ct. App. 2005) (holding that student did not have a property interest in attending graduation ceremony, but referencing the generalized right to attend public school articulated in <u>Goss</u>).  Moreover, the fact that public school attendance is mandatory in Washington under RCW § 28A.225.010 indicates that students have a property interest in continued enrollment.  <u>Cf. Goss v. Lopez</u>, 419 U.S. 565, 574 (1975) (construing Ohio law that requires children to attend public school as creating a property interest in public education).  Once a state provides children the right to a public education, the Fourteenth Amendment protects students against deprivation of that entitlement without due process of law.  <u>Goss</u>, 419 U.S. at 574.   The court therefore turns to the second question of whether Defendants employed adequate procedures to protect Doe's interest.

The court begins by noting that, failure to follow state or local regulations or policies does not ordinarily establish a violation of an individual's right to procedural due process.  <u>See Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 540-41 (1985); cf <u>Goodisman v. Lytle</u>, 724 F.2d 818, 820-21 (9th Cir. 1984) (holding that teacher did not have a property interest in the procedures themselves).  Doe dedicates much of his briefing to a discussion of the ways in which Dr. Simms and the District contravened their own policies and procedures as well as those contained in the WAC.  Doe's analysis misses the mark.  It is true that, had Defendants followed their own procedural safeguards, they would likely stand on firmer ground in this lawsuit.  Still, the court does not translate Defendants' failure to comply with school policies or state regulations into a federal procedural due process violation.  <u>Cf. Walker v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994) (holding that so long as defendant-prison complied with due process requirements, failure to comply with its own more generous procedures was not a constitutional violation).  The court examines the process that Defendants actually provided Doe in order to determine whether it meets the constitutional minimum.

ORDER – 7

1    In <u>Goss v. Lopez</u>, the Supreme Court considered the question of what process is

2  due in the context of short-term exclusions from school.  419 U.S. at 581.  There, Ohio

3  school administrators had suspended several students for alleged misconduct without any

4  hearing.  419 U.S. at 568.  The Court held that, in the context of temporary exclusions

5  from school of 10 days or less, the school must provide at least "rudimentary

6  precautions" to avoid mistaken or arbitrary suspensions.  <u>Id.</u> at 581.  At a minimum, the

7  student must have oral or written notice of the charges and, if the student denies them, an

8  explanation of the evidence and an opportunity to present his or her side of the story.  <u>Id.</u>

9  Said another way, the student is entitled to "*some* kind of notice" and "*some* kind of

10  hearing."  <u>Id.</u> at 579.  The formality required is minimal: "[i]n the great majority of cases

11  the disciplinarian may informally discuss the alleged misconduct with the student minutes

12  after it has occurred."  <u>Id.</u> at 582.  Indeed, the Court expressly cautioned against imposing

13  on administrators inflexible, countrywide standards to fit the multitude of situations that

14  schools face.  <u>Id.</u> at 578.

15    Under the circumstances presented here, the court concludes that Defendants have

16  complied with the minimum due process requirements articulated in <u>Goss</u>.[2]  First,

17  contrary to Doe's contention, <u>Goss</u> does not require written notice prior to short-term

18  exclusions from school.  Indeed, not only did the <u>Goss</u> Court countenance *either* written

19  or oral notice, <u>id.</u> at 581, the Court recognized that, where a student's presence at school

20  "poses a continuing danger to persons" the school need not provide *any* notice prior to the

---

[2]The year following <u>Goss</u>, the Supreme Court announced in the seminal case of <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335 (1976), the balancing test for determining what process is due in a given context.  Although <u>Goss</u> predates <u>Mathews</u>, the <u>Goss</u> Court's analysis considers the same principles in setting the constitutional floor for due process in the school suspension context. Accordingly, this court applies <u>Goss</u> as the benchmark, rather than undertaking the <u>Mathews</u> balancing test anew.  <u>See</u> <u>Shuman Ex Rel. Shertzer v. Penn Manor Sch. Dist.</u>, 422 F.3d 141, 149 (3rd Cir. 2005) (applying <u>Goss</u> to student's procedural due process claim against school following four-day suspension).

ORDER – 8

suspension or expulsion.  Id. at 582.  Here, Principal Gillaspie gave Doe and his mother immediate oral notice of his exclusion from school.  Later that same day, Dr. Simms met with Doe and his parents to explain the basis for an emergency expulsion.  She informed them of the condition for Doe's reentry and gave Doe's parents a copy of the District's SAV policy as well as a document that explained the procedures for appealing the decision.  This was all that was procedurally required to put Doe on notice.

For reasons unclear to the court, the parties do not discuss in their briefs whether the initial meeting on the evening of February 28 with Dr. Simms constituted a hearing. The court considers the informal meeting as constituting "*some* kind of hearing" for purposes of due process.  Goss, 419 U.S. at 579.  Notably, when a student admits to the conduct in question, courts have recognized that the need for a hearing is significantly diminished because the risk of an administrator making an erroneous decision vanishes. See Black Coal. v. Portland Sch. Dist. No. 1, 484 F.2d 1040, 1045 (9th Cir. 1973) (holding that the school did not have to provide a hearing on the question of expunging blemished record where student had "admitted all of the essential facts which it is the purpose of a due process hearing to establish"); see also Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 624 (5th Cir. 2004).[3]

In this instance, Doe's frank admission in the police reports to the conduct in question absolved the Defendants from holding anything more formal than the initial meeting with Doe's parents.[4]  Whatever Doe's qualm with the decision itself, there is no

---

[3]The Goss Court's holding also incorporates the significance of a student's admission or denial of the conduct: "due process requires . . . that the student be given oral or written notice of the charges against him and, *if he denies them*, an explanation of the evidence . . . and an opportunity to present his side of the story."  419 U.S. at 581 (emphasis added).

[4]The court notes that Defendants were entitled to rely on Doe's statements in the police reports as conclusive evidence that the assaults occurred.  Cf. Black Coal., 484 F.2d at 1045 (upholding school's reliance on juvenile court's findings to determine that student committed assault).

ORDER – 9

dispute that Defendants possessed accurate information regarding Doe's assault. The operative facts were simply not in question, and thus, it is doubtful that due process required Defendants to provide *any* hearing. Accordingly, the court grants Defendants' motion for summary judgment on Doe's procedural due process claim.

Before proceeding to Doe's remaining claims, the court expresses its dismay over Defendants' practice of imposing expulsions for an indefinite number of days. By a stroke of luck (or perhaps pressure from Doe's attorney), Doe's expulsion lasted just ten days, bringing the due process requirements within the Goss fold. Had Doe's expulsion continued while, for example, Doe's parents and Dr. Simms continued to argue about the qualifications of various therapists, the court's analysis may very well have ended differently. Fortunately for Defendants, the fact remains that Doe's expulsion was relatively short, and thus, the rudimentary notice and hearing met the constitutional minimum.

**B.    Substantive Due Process**

Procedures aside, at the heart of this case is Doe's challenge to the substance of Defendants' decision. Doe adamantly argues that Defendants lacked sufficient reason to believe that he was a threat to himself or other students and that his inter-family, out-of-school conduct did not warrant an emergency expulsion. Doe alleges that the expulsion decision was arbitrary because: (1) the SAV policy on its face does not actually protect students from violence, (2) Defendants did not adequately investigate risk factors associated with school violence or Doe's history of violence, (3) there was an insufficient "nexus" between his off-campus behavior and the school's interest in keeping the student body safe, (4) the school board had not yet adopted the SAV policy, and (5) Doe did not violate any school rules.

To make out a substantive due process claim on any of the above theories, Doe must show conduct that either "shocks the conscience" or results in an arbitrary

ORDER – 10

deprivation of a "fundamental right."  See Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir.

2006).  The United States Supreme Court describes fundamental rights as "those personal

activities and decisions that this Court has identified as so deeply rooted in our history

and traditions, or so fundamental to our concept of constitutionally ordered liberty, that

they are protected by the Fourteenth Amendment."  Washington v. Glucksberg, 521 U.S.

702, 727 (1997).  Not surprisingly, the list of fundamental rights is short, and the Court

has cautioned against expanding the reach of the substantive arm of the Due Process

Clause.  Id. at 721.

Doe contends that Defendants deprived him of his fundamental right to have his

parents direct his upbringing.  Pl.'s Opp'n at 15-16 (citing Wisconsin v. Yoder, 406 U.S.

205, 232 (1972)).  Although it is not altogether clear how this right is implicated, it

appears that Doe takes issue with the fact that Defendants' decision to expel him centered

on events that occurred within the confines of the family home.  Doe also contends that

the SAV policy, because it reaches off-campus violence, "impermissibly intruded upon

his family's substantive due process rights to privacy and to parental control."  Pl.'s

Opp'n at 16.

The court disagrees that the right of Doe's parents to control his upbringing is

implicated in this case.  First, Doe does not provide any authority for the proposition that

he has standing to assert this right.  The right to direct a "child's care, custody, and

control" is uniformly stated as belonging to the *parents*.  E.g., Troxel v. Granville, 530

U.S. 57, 65 (2000); Pierce v. Society of Sisters, 268 U.S. 510, 534-35 (1925); Meyer v.

Nebraska, 262 U.S. 390, 400 (1923).

Regardless, even if the court assumes that Doe has standing to assert this

fundamental right, the court holds that, in this instance, the right "does not extend beyond

the threshold of the school door."  Fields v. Palmdale Sch. Dist., 427 F.3d 1197, 1207

(9th Cir. 2005) (holding that parents had no due process or privacy right under Meyer or

ORDER – 11

Pierce to override a public school's determination regarding health education materials to which children would be exposed). Rather, when Doe's parents chose to enroll Doe in public school, they surrendered their exclusive right to make decisions regarding when his behavior poses a risk to himself or others.[5] See Fields, 427 F.3d at 1206. Defendants determined that the off-campus assault was relevant to their duty to maintain safe school grounds; they did not unconstitutionally interfere with the Doe family's decision to contact the police about Doe's behavior in the first instance.[6]

Because the court concludes that Defendants have not infringed a fundamental right, the court applies rational basis review. See Fields, 427 F.3d at 1208.[7] In the context of school expulsions, "a substantive due process claim will succeed only in the 'rare case' when there is no rational relationship between punishment and the offense." Seal v. Morgan, 229 F.3d 567, 574 (6th Cir. 2000); see also Brewer v. Austin Indep. Sch. Dist., 779 F.2d 260, 264 (5th Cir. 1985) (applying Seal standard). On this topic, the Supreme Court in Wood v. Strickland stated:

> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion . . . . The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of specific constitutional guarantees.

---

[5]Although no party raised it, the court is struck by the fact that Doe's sisters also attend schools within the District. See Jane Doe Decl. ¶ 3.

[6]The court reaches its decision regarding the limitations on parental rights in the context of public schools mindful that, under common law, those same schools are faced with the enhanced, nondelegable duty to protect students from harmful actions of others students. E.g., Carabba v. Anacortes Sch. Dist., 435 P.2d 936, 958 (Wash. 1968); J.N. v. Bellingham Sch. Dist., 871 P.2d 1106, 1111 (Wash. Ct. App. 1992).

[7]Other circuits apply the rational basis test where a parent asserts the right to control a child's upbringing as a basis for challenging state action in public schools. See Herndon v. Chapel Hill-Carrboro City Bd. of Ed., 89 F.3d 174, 178-179 (4th Cir. 1996); Immediato v. Rye Neck Sch. Dist., 73 F.3d 454, 461-462 (2d Cir. 1996).

420 U.S. 308, 326 (1975).[8]

Indeed, even where a fundamental right is implicated, the court reviews "with deference, schools' decision in connection with safety of their students." LaVine v. Blaine Sch. Dist., 257 F.3d 981, 992 (9th Cir. 2001) (upholding school officials' decision to expel student based on a violent poem, even though student's freedom of expression right implicated). Under this deferential standard, lower courts have upheld school administrators' efforts to regulate off-campus conduct based on safety concerns. See, e.g., Cohn v. New Paltz Central Sch. Dist., 363 F. Supp.2d 421, 434 (N.D.N.Y. 2005) (denying substantive due process challenge to school's expulsion based on student's possession of a handgun off school property).

Here, the court concludes that Defendants have shown a rational relationship between their decision to expel Doe in order to ascertain his potential for violence, and Doe's prior assaults. There is no question that Defendants' sole concern in deciding to expel Doe centered on his safety and the safety of the other school children. The court does not substitute its own judgment for that of Defendants in determining how to make schools safe in an era of increasing school violence. Further, the court declines to second-guess Defendants' decision where Doe does not cite any evidence that Defendants' conduct "shocks the conscience."[9] See Brittain, 451 F.3d at 991.

Finally, Doe contends that Defendants have arbitrarily maintained reference to the expulsion in his school records. As such, Doe seeks injunctive relief to require Defendants to expunge his records. In response, Defendants cite the need to maintain

---

[8]Although the court recognizes that the decisions in this discussion primarily deal with expulsions for disciplinary purposes, the court cannot conceive of any reason to apply lesser deference to a school decision based on safety concerns.

[9]Indeed, when asked at oral argument whether such evidence existed, Doe's counsel simply maintained that the conscience-shocking inquiry did not apply because Doe had asserted a fundamental right.

ORDER – 13

such records in order to preserve institutional memory of incidents that may inform future decisions regarding school safety.

The court denies Doe's request for permanent injunctive relief. Doe has not prevailed on either of his constitutional claims and the court is not aware of any separate constitutional right to an unblemished school record. As such, the court denies his requested relief. The court recognizes that the Ninth Circuit in <u>LaVine</u> ordered the defendant-school to expunge a high school student's record of negative documentation once the perceived threat had subsided. 257 F.3d at 992. In doing so, the court noted that a "permanent blemish" would "harm [the student's] ability to secure future employment." <u>Id.</u> By contrast, Doe has made no showing whatsoever that the information in his school record poses any risk of harm to his future educational or professional opportunities. Defendants, on the other hand, represent to the court that the files are internal, confidential, and shredded "upon [Doe's] graduation."[10] Defs.' Opp'n at 19. Without more, the court denies Doe's request for relief.

**C.   State Law Claims**

Doe appears to have abandoned any claims arising under state law. Defendants assert that Doe did not comply with the notice-of-claim provisions under state law. Doe does not contest this fact and simply reiterates that his federal claims do not require such notice. Without any evidence or argument to the contrary, the court grants Defendants' motion for summary judgment on Doe's state law claims.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 17) and DENIES Doe's motion (Dkt. # 51). The court directs the clerk to enter judgment consistent with this order. No claims remain and the case is hereby closed.

---

[10]The court advises the parties that, if Defendants fail to act in accordance with their representation, Doe may request relief from the court.

ORDER – 14

Dated this 26th day of January, 2007.

_____
JAMES L. ROBART
United States District Judge

ORDER – 15